UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BETH E.-A., | ) |
| Plaintiff, | ) No. 23-cv-16998 |
| v. | ) Magistrate Judge Keri L. Holleb Hotaling |
| FRANK BISIGNANO, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This is the third time the instant disability appeal comes before the Court; Plaintiff Beth E.-A.[1] ("Plaintiff") once again appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability insurance benefits under Title II of the Social Security Act. The parties have filed cross motions for summary judgment. For the reasons detailed below, the Court grants Plaintiff's motion for summary judgment [Dkt. 8], denies the Commissioner's motion for summary judgment [Dkt. 9], and the case is again remanded for further proceedings consistent with this Memorandum Opinion and Order.

**I.  BACKGROUND**

   **a.  Procedural History**

In July 2012, Plaintiff filed for Disability Insurance Benefits ("DIB"), alleging an onset date of disability of February 15, 2013. [Administrative Record ("R.") 61.] Plaintiff's claim was denied initially and on reconsideration. *Id.* After an Administrative Hearing, ALJ Edward P. Studzinski issued an October 8, 2014 opinion finding Plaintiff not disabled. [R. 61-69.] Plaintiff did not appeal.

Three years later, in February 2017, Plaintiff applied for DIB benefits again, alleging an

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

1

onset date of disability of October 9, 2014.[2] [R. 180-89.] Plaintiff's claim was denied initially and on reconsideration. [R. 100-102, 107-109.] ALJ Diane S. Davis held an Administrative Hearing and issued an October 31, 2018 opinion finding Plaintiff not disabled. [R. 13-20.] Plaintiff appealed that decision to this Court. The Court issued an August 24, 2020 remand order, faulting the ALJ for improperly addressing the opinions of Plaintiff's treating physicians. [R. 733-45.]

Upon remand, the Commissioner assigned Plaintiff's case to a third ALJ, Janet Akers.[3] ALJ Akers held another Administrative Hearing on March 17, 2021. [R. 643-706.] On March 31, 2021, ALJ Akers found Plaintiff was not disabled. [R. 621-34.] Plaintiff also appealed that decision to this Court and, on September 29, 2022, the Court again remanded the matter, finding that ALJ Akers erred in her residual functional capacity evaluation. [R. 1252-61.]

On September 1, 2023, ALJ Akers entered another unfavorable decision finding Plaintiff was not disabled. [R. 1152-63.] Plaintiff has now appealed that final decision, which is reviewable by the district court under 42 U.S.C. § 405(g), and is ripe for decision.

Plaintiff's medical history has already been set forth fully by the Court in its prior opinions on Plaintiff's disability benefits claim [*see* R. 733-45, 1252-61; *Beth E.-A. v. Saul*, No. 21-cv-3670, 2022 WL 4552618 (N.D. Ill. Sept. 29, 2022)], so the Court will not reiterate that history here.

b. **The ALJ's Decision**

On September 1, 2023, ALJ Akers issued a written decision denying Plaintiff disability benefits for the relevant time period between Plaintiff's alleged onset date of July 22, 2015 and her DLI of December 31, 2017. [R. 1152-63, 1203.] At Step One, the ALJ determined Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date through her

---

[2] At the August 1, 2023 Administrative Hearing, Plaintiff's counsel amended her onset date to July 22, 2015. [R. 1203; 1125.] Therefore, the relevant period at issue presently before the Court spans from July 22, 2015 through Plaintiff's date last insured ("DLI") of December 31, 2017. [R.1152.]

[3] There is no SSA policy dictating that subsequent cases be assigned to the same ALJ as was familiar with and decided the case prior, although the SSA does try for consistency in this regard upon remand. *See* HALLEX I-2-1-55, setting forth the SSA's internal guidelines for Assignment of Service Area Cases to Administrative Law Judges.

DLI. [R. 1154.] At Step Two, the ALJ found that Plaintiff had severe impairments of: degenerative disc disease of the lumbar spine; post-laminectomy syndrome; and meniscal tear, left knee. *Id.* The ALJ found Plaintiff's obesity to be a nonsevere impairment. [R. 1155.] At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. *Id.* Before Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work, with the following additional limitations: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; avoidance of unprotected heights and vibration; and no production pace work. [*Id.*] At Step Four, the ALJ determined that Plaintiff was capable of performing her past relevant work as a Utilization Review Coordinator (DOT #079.262-010).[4] [R. 1162.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R. 1162-63.]

## II. DISCUSSION

Among other things, Plaintiff complains the ALJ's analysis under Social Security Regulation ("SSR") 16-3p was insufficient. The Court agrees.

SSR 16-3p requires the ALJ to "evaluate the intensity and persistence" of a claimant's pain symptoms after the ALJ has found the claimant had "medically determinable impairment(s) that could reasonably be expected to produce those symptoms." SSR 16-3p (Mar. 16, 2016). In evaluating symptoms, the ALJ must consider:

> 1. [The claimant's] [d]aily activities; 2. The location, duration, frequency, and intensity of pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms…; and 7. Any other factors concerning [the]

---

[4] Strangely, this conflicts with ALJ Akers's own March 31, 2021 decision where she found Plaintiff could do light work but was ***not*** capable of performing her past relevant work as a Utilization Review Coordinator. [*See* R. 1257-58.]

3

individual's functional limitations and restrictions due to pain or other symptoms. *Id*.

The ALJ began her 16-3p analysis by stating that the "existence of [Plaintiff's] impairment is not in dispute, as the claimant has fusion hardware in two areas of her spine." [R. 1159.] The ALJ then noted that "the physical exam findings do not support the degree to which the claimant is disabled [because a]ccording to other providers, the claimant has full motor strength in the upper and lower extremities, no deficits in gait, and negative straight leg raising." *Id*. Yet the ALJ fails to explain how these findings undercut Plaintiff's complaints of disabling pain, let alone the other factors in SSR 16-3p.

In relying on the "other providers" concerning Plaintiff's motor strength, gait, and straight-leg-raising abilities, the ALJ set aside the statements of Plaintiff's back-surgeon Keith L. Schaible, M.D., (because he did "not include objective findings" in his notes) who noted that Plaintiff was experiencing pain every day, she showed no real changes in her condition or symptoms; and she "remain[ed] unable to return to work, likely never to return back to work with this persistent pain." [R. 1159-60; *see also* R. 313.] The Court finds fault in the way the ALJ sidestepped Dr. Schaible's findings due to a lack of objective findings because, as countless cases have recognized, the etiology of extreme pain is often unknown and can be severe and disabling even in the absence of "objective" medical findings demonstrating a physical condition that normally causes pain of the severity claimed by an applicant. *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004).

The remainder of the ALJ's 16-3p analysis discounted Plaintiff's claimed symptoms because: (a) Plaintiff's medications were not adjusted during the period before her DLI; (b) a nurse practitioner advised Plaintiff to seek mental health treatment but "there is no indication [Plaintiff thereafter] sought or received any mental health treatment prior to her [DLI];" (c) Plaintiff had 40% improvement in pain with her medications in February 2017; and (d) no provider wrote in the

records Plaintiff should elevate her legs.

Regarding Plaintiff's medication adjustments, the ALJ is simply wrong about the lack of medication adjustments between 2015 and 2017. There were indeed adjustments to Plaintiff's medications beginning in 2015. Plaintiff was previously on Norco and her pain specialist Ebby P. Jido, M.D. started her on MS Contin 50 and MSIR 15. [R. 328.] In August 2015, Dr. Jido found Plaintiff had better relief with 30 mg. of Hysingla.[5] [R. 329.] Dr. Jido increased Plaintiff's Hysingla to 40 mg. in September 2015, then to 80 mg. in December 2015. [R. 332, 337.] Even on a daily dose of 80 mg., Plaintiff reported she was "not sure if the Hysingla ER dose increase is helping with pain because she is still in pain all the time…" [R. 337.] In 2017, Ibuprofen 800 mg with Famotide was added to the Hysingla. [R. 607.] Various other medications, including fentanyl patches, morphine ER, Cymbalta, Gabapentin, and Lyrica, were tried or considered to complement the Hysingla, but Plaintiff had adverse reactions to these medications. [R. 356, *see also* R. 884 (2020 note discussing earlier adverse reactions).] Thus, contrary to the ALJ's assertion, there were medication changes to try to combat her intractable pain prior to her DLI. The Court agrees with Plaintiff's assertion [Dkt. 8-1 at 5] that implicit in these physicians' care for Plaintiff is that they believed her complaints of ongoing chronic disabling pain were severe enough to require continuing narcotic medication prescriptions, with adjustments, in 2015-2017. (Even assuming, arguendo, the ALJ was correct that there were no medication changes during the relevant time period, this means the ALJ failed to recognize and discuss that Plaintiff may have reached a plateau with her medications. *See* SSR 16-3p (stating that when evaluating an individual's treatment history, an ALJ should specifically consider that "[a]n individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau")).

---

[5] "HYSINGLA ER is an opioid agonist indicated for the management of severe and persistent pain that requires an extended period with a daily opioid analgesic and for which alternative treatment options are inadequate." Food and Drug Administration (https://www.accessdata.fda.gov/drugsatfda_docs/label/2023/206627s015lbl.pdf) (last accessed August 15, 2025).

Next, the ALJ 16-3p focused on how Nurse Kos "suggested [Plaintiff] see a mental health professional" and Plaintiff's purported failure to follow through on that suggestion, which the ALJ seems to have inferred meant Plaintiff's symptoms were not as severe as she claimed. [R. 1161 (apparently referencing R. 339, although the ALJ did not cite it).] The ALJ, though, should not have placed such emphasis on that fact. Because this odyssey of a case was filed before March 27, 2017, under Social Security rules at the time, 20 C.F.R. § 404.1502, Nurse Kos was not considered an acceptable medical source to opine on whether Plaintiff needed mental health care. Moreover, it is not clear Nurse Kos felt the Plaintiff medically required mental health care versus merely advising that therapy was something that might be of benefit to her, *i.e.*, there is no prescription or referral for the same, and Nurse Kos's actual note reads "Patient was advised to schedule an appointment with a psychiatrist or psychotherapist – information was provided to patient." [R. 339.] The fact remains that (under the then-existing rules) no competent treating source prescribed cognitive behavioral therapy for Plaintiff, so her failure to pursue it should be inconsequential to an analysis of the severity of her symptoms.

Next, the ALJ also myopically focused on one portion of a February 9, 2017 treatment note from Nurse Kos, in which she documented Plaintiff's report of 40% relief with medication. [R. 1157.] The Court finds this improvement should be noted in the context of the whole note and, indeed, it smacks of improper cherry-picking that the ALJ did not do so. "An ALJ cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding," because by doing so, the ALJ fails to support her conclusion of non-disability with substantial evidence. *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020). An ALJ improperly cherry-picks evidence not only when the ALJ completely disregards evidence supporting a finding of disability, but also when the ALJ "emphasize[s]" and "overstate[s] the evidence" and "overlook[s], or at least d[oes] not acknowledge" facts that support a finding of disability, which

6

the ALJ has done here. *Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021); *see also Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (same). After all, in addition to the 40% pain relief Plaintiff reported from her medications, the same treatment note from Nurse Kos also stated that Plaintiff reported her worst pain was 10/10 and her least pain was 5/10. [R. 357.] She reported chronic persistent lower back pain, radiating down both buttocks to both legs; Plaintiff described her pain as "sharp, burning, shooting, tearing, deep" and "aching, burning, radiating, sharp, stabbing, throbbing;" her pain increases with spine extensions; Plaintiff has occasional numbness and tingling in both legs and feet, which intensified while at rest and at bed-time; the muscles in Plaintiff's lower back feel achy, sore, tense, and tight; Plaintiff had more pain in her right hip and buttocks than her left and it intensifies with walking; Plaintiff "is unable to lay down on the right side due to pain in the right hip area;" Plaintiff's pain increased when standing from a seated position; Plaintiff was "unable to stand in one position for more than 10-15 minutes due to pain;"[6] and her pain interferes with her activities of daily living, personal and social life, house chores, sleep, concentration, emotions, and relationships. [R. 355-58.] The notations further indicated Plaintiff's medications included Hysingla ER 80 mg. and Duexis for pain and inflammation; Plaintiff tried Skelaxin but it was discontinued due to abdominal pain; Gabapentin was discontinued because it caused Plaintiff to be groggy; Cymbalta was discontinued because it caused Plaintiff to be jittery and anxious; Plaintiff was planning on trying Lyrica. [R. 356.] Plaintiff had not been feeling well over the past few weeks, but she was alert and appropriate and overall functioning well. [*Id*.] Plaintiff reported

---

[6] This report to Nurse Kos is generally consistent with Plaintiff's testimony in this matter (the Court notes that although some testimony below was given outside the applicable time period, it suggests consistent symptoms from before and continuing after that period). For example, on March 11, 2014, Plaintiff testified that after 30-45 minutes of sitting, she had to lay down and after standing 10-15 minutes, she had to move around. [R. 1181.] In her April 4, 2017 Adult Function Report, Plaintiff wrote that "[c]onstant standing or constant sitting aggravates the pain. I can only stand in one place for no longer that 20-30 min. without intense pain or sitting in an uncomfortable, regular chair office chair for longer than 45 min to an extreme max of 1 hour." [R. 227-28.] On June 29, 2018, Plaintiff testified she could not stand or sit more than 45 minutes before she had to put her feet up. [R. 36.] Her testimony at the third hearing on March 7, 2021 was consistent. [R. 658.] At her September 23, 2023 hearing, Plaintiff also testified that in 2015, 2016, and 2017 she could sit and stand for only about 45 minutes to an hour, after which she needed to move and elevate her legs. [R. 1206-7.]

that movement aggravates her pain, as well as weight bearing, passive range of motion, walking and standing; cold therapy alleviated her pain, along with medication moist heat, repositioning, spinal flexion, and rest. [R. 357-58.] Plaintiff was instructed to continue to stay as active as tolerated. [R. 358.] Read as a whole, the Court does not view the "40% pain relief with medications" as the optimistic takeaway message from Nurse Kos the ALJ frames it as; the Court views this note as a far more somber report on Plaintiff's pain and her functioning affected because of that pain, despite marginal relief. This type of analysis again strikes the Court "as impermissible cherry-picking—highlighting facts that support a finding of non-disability while ignoring evidence to the contrary." *Martin*, 950 F.3d at 375 (referencing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

Finally, although the ALJ acknowledged Plaintiff's testimony that she needed to elevate her legs throughout the day during the relevant time period [R. 1160], the ALJ improperly focused on the fact that "at no point during this period has any provider suggested that the claimant should elevate her legs to alleviate pain despite her alleged need to elevate her legs prior to her date last insured during her hearing."[R. 1159.] First, the Court finds it error for the ALJ to have assumed that Plaintiff's reported need to elevate her legs would only be valid if a doctor suggested it to her, as the ALJ seems to intimate. *See Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (lack of a prescription for an assistive walking device not enough to discredit testimony regarding pain). Analogous to the Seventh Circuit's holding in *Terry v. Astrue*, 580 F.3d at 477-78, the Court finds that the fact that an individual elevates their legs, even when the same is not specifically prescribed or recommended by a doctor, is not probative of her need to elevate her legs in the first place. Moreover, the ALJ again ignores the tenets of SSR 16-3p, which direct the ALJ to consider "[a]ny measures other than treatment an individual uses or has used to relieve pain or other symptoms." SSR 16-3P, 2017 WL 5180304, at *8 (Oct. 25, 2017); *see also Parker v. Astrue,* 597 F.3d 920, 922 (7th Cir. 2010) (stating that ALJ erred in failing to consider claimant's use of an assistive device in

8

the symptom evaluation); *Terry*, 580 F.3d at 478 (same). Elevating her legs is one such measure Plaintiff uses to alleviate her pain, and it should have been reviewed pursuant to SSR 16-3p instead of discarded because it had not been prescribed.

In sum, as detailed herein, the ALJ committed reversible error by failing to properly apply the dictates of SSR 16-3p to determine if Plaintiff's complaints of pain were supported by the evidence. Plaintiff's pain was not properly analyzed under SSR 16-3p to determine whether it limits Plaintiff's ability to work. The Court remands on this basis.

## III. CONCLUSION

Based on the foregoing, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. The Court is mindful not to overstep its bounds here and, despite the labyrinthine procedural history of Plaintiff's quest for benefits, the briefs before the Court have not convinced it that the record can yield but one supportable conclusion, *see Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993), that Plaintiff is disabled. Therefore, while the Court is dismayed by Plaintiff's procedural journey here and the varying results (and the often conflicting ALJ decisions, even from the same ALJ, *see* n. 4, that keep being remanded due to error), the Court cannot award benefits here. *See Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018), *amended on reh'g* (Aug. 30, 2018) (collecting cases). But the Court urges the ALJ upon remand to carefully analyze Plaintiff's subjective complaints of pain under the applicable regulations (at the time Plaintiff's application was filed) and compare them to the available pertinent medical evidence.

Plaintiff's motion for summary judgment [Dkt. 8] is granted; the Commissioner's motion for summary judgment [Dkt. 9] is denied. The case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

Dated: August 26, 2025

                                                                                  Keri L. Holleb Hotaling
                                                                                  United States Magistrate Judge